# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

_____

**CENTEC, LLC,**
        **Plaintiff,**

     **v.**                              **Case No. 15-C-1401**

**MARK PLUTSHACK,**
**AEGIR SPECIALTY VALVES, LLC,**
**AEGIR BREWING SYSTEMS, LLC,**
**and LEE PLUTSHACK,**
        **Defendants.**

_____

## DECISION AND ORDER

In the present case, the plaintiff, Centec LLC, filed a complaint against the defendants alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68. The complaint also alleges that the primary defendant, Mark Plutshack, breached his employment contract with Centec and committed various state-law torts. Because the parties are not diverse, the plaintiff's RICO claim provides the sole basis for federal jurisdiction: the court has jurisdiction over the RICO claim pursuant to 28 U.S.C. § 1331 and, for that reason, may exercise supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367. The defendants have moved to dismiss the RICO claim under Federal Rule Civil Procedure 12(b)(6). Mark Plutshack contends that if I dismiss the RICO claims, I should also relinquish supplemental jurisdiction over the state-law claims against him.

## I. BACKGROUND

According to the allegations of the complaint, which I accept as true for purposes of deciding the motions to dismiss, Centec LLC, a Wisconsin limited liability company, markets in North America the products of its European parent company, Centec GmbH.

1

Centec GmbH develops and manufactures skid-mounted systems and sensors for liquid- and gas-processing in various industries, including the brewery and beverage industries and the pharmaceutical and biotechnology industries. The business of both Centec GmbH and Centec LLC depends on having exclusive distributorship agreements with parts manufacturers. This case involves two such distributorship agreements: one between Centec GmbH and Kieselmann GmbH (a company located in Germany), and one between Centec GmbH and Keofitt A/S (a company located in Denmark). The complaint alleges that these were two of Centec's "most important exclusive distributorship agreements." Compl. ¶ 16.

The primary defendant in this case is Mark Plutshack. According to the allegations of the complaint, Plutshack joined Centec LLC on June 1, 2000, when he became a member of the LLC and obtained a 13.2% ownership interest. The other members of Centec LLC were Centec GmbH, which owned 67% of the LLC, and two other individuals, who each owned 9.9% of the LLC. At the same time that he became a member of Centec LLC, Plutshack signed an employment agreement with the LLC that made him the firm's general manager.

The complaint alleges that, between September 2014 and October 2015, Plutshack convinced Kieselmann GmbH and Keofitt A/S to terminate their contracts with Centec GmbH and enter into exclusive distributorship agreements with a new company that he was in the process of forming, known as Aegir Specialty Valves LLC. (The complaint names Aegir Specialty Valves LLC as a defendant.) More specifically, the complaint alleges that, in September 2014, while he was both a member and employee of Centec LLC, Plutshack began talking to Kieselmann about terminating its agreement with Centec GmbH and following him to a new business entity. Eventually, Plutshack

2

was successful, in that Kieselmann terminated its agreement with Centec GmbH on October 22, 2015, and then began doing business with Aegir Specialty Valves, which was formed sometime during the month of September 2015. Centec LLC alleges that it has an email in its possession, dated September 29, 2014, from a Kieselmann representative to Plutshack, in which the Kieselmann representative states that his company is open for a meeting but that "point 15 will be the problem." Compl. ¶ 38 & Ex. 5. Attached to the email is a page from the distributorship agreement between Kieselmann and Centec GmbH containing paragraph 15, which provides penalties for early termination of the agreement.

The complaint further alleges that, in August 2015, Plutshack began talking to Keofitt about terminating its agreement with Centec GmbH and following him to a new business entity. Again, Plutshack was successful, in that Keofitt terminated its agreement with Centec GmbH on September 24, 2015, and then began doing business with Aegir Specialty Valves. Centec LLC alleges that it has an email in its possession, dated August 4, 2015, documenting a discussion between Plutshack and Keofitt representatives and which attaches a proposed distributorship agreement between Keofitt and an unnamed business entity, of which Plutshack would be the "president." Compl. ¶ 47 & Ex. 7.

The complaint alleges that Plutshack's employment with Centec LLC ended on September 30, 2015. Compl. ¶ 21. However, the complaint does not allege whether Plutshack resigned from Centec LLC or was terminated. The complaint alleges that Plutshack continues to be a member of Centec LLC, but it does not allege that Plutshack has any continuing involvement in the operation of the firm's business.

3

The complaint also names as defendants Lee Plutshack, who is Mark Plutshack's brother, and Aegir Brewing Systems LLC, a company in which Lee Plutshack has "an ownership interest." Compl. ¶ 112. According to the complaint, "Aegir Brewing Systems designs and builds brewhouses using technology, control systems and automation typically found in large brewing systems." *Id.* ¶ 93. The complaint alleges that, "[i]n its services and products, Aegir Brewing Systems incorporates the type of technology and systems manufactured and sold by Centec LLC, and uses the types of parts manufactured and sold by Kieselmann and Keofitt." *Id.* ¶ 94. The complaint further alleges that Lee Plutshack and Aegir Brewing Systems were "aware" of Mark Plutshack's efforts to convince Kieselmann and Keofitt to terminate their agreements with Centec and that they helped him establish Aegir Specialty Valves for the purpose of having it serve as the distributor of Kieselmann and Keofitt products in the United States. *Id.* ¶¶ 95–98, 114–17.

Based on these facts, Centec alleges that Mark Plutshack conducted the affairs of an "enterprise" (composed of the Plutshacks and the two Aegir entities) through a pattern of racketeering activity, and thus violated RICO. *See* 18 U.S.C. § 1962(c). The alleged racketeering activity involved Mark Plutshack's using the wires to secretly convince Kieselmann and Keofitt to terminate their relationships with Centec—a company to which Plutshack owed a duty of loyalty—and begin doing business with Aegir Specialty Valves. Centec alleges that these actions constituted wire fraud. Centec further alleges that Lee Plutshack and the two Aegir entities are liable under RICO as conspirators. *See* 18 U.S.C. § 1962(d). Finally, Centec alleges state-law claims against Mark Plutshack for breach of his employment contract, breach of the

4

statutory duties that he owed to Centec LLC as a member of the firm, misrepresentation, conversion, and civil theft.

Mark Plutshack has moved to dismiss the complaint for failure to state a RICO claim against him. He contends that if I dismiss the RICO claim, I should also relinquish supplemental jurisdiction over the state-law claims that Centec has asserted against him. The remaining defendants have filed a separate motion to dismiss the complaint, in which they contend that the complaint fails to allege a RICO claim against Mark Plutshack and also fails to allege that they conspired with him and each other to violate RICO.

## II. DISCUSSION

To survive a Rule 12(b)(6) motion, a plaintiff must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must, at a minimum, "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. In construing plaintiff's complaint, I assume all factual allegations to be true but disregard allegations that are conclusory. *Iqbal*, 556 U.S. at 678.

Here, the defendants' motions to dismiss take aim at Centec's RICO claims, which arise under 18 U.S.C. § 1962(c)–(d). Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering

5

activity." 18 U.S.C. § 1962(c). A civil remedy is available under 18 U.S.C. § 1964. To establish a violation of § 1962(c), the plaintiff must prove four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 655 (7th Cir. 2015). Section 1962(d) makes it unlawful for a person to conspire to violate § 1962(c).

An initial question is whether Centec has satisfactorily alleged that Mark Plutshack engaged in racketeering activity. "Racketeering activity" is defined in 18 U.S.C. § 1961(1)(B) to include a long list of crimes. One such crime is wire fraud in violation of 18 U.S.C. § 1343. Here, Centec contends that Plutshack committed two acts of criminal wire fraud when it secretly communicated with Kieselmann and Keofitt by email and telephone, while he was a member and employee of Centec, in an effort to convince these companies to terminate their relationships with Centec and follow him to Aegir Specialty Valves. The elements of wire fraud are: (1) the defendant's participation in a scheme to defraud; (2) defendant's commission of the act with intent to defraud; and (3) use of the interstate wires in furtherance of the fraudulent scheme. *See Bible*, 799 F.3d at 657.

At this point, one may wonder how Plutshack's alleged conduct could amount to a "scheme to defraud" Centec, inasmuch as Plutshack is not alleged to have made any explicit representations to Centec that were false. The answer is that "fraud" in its elementary, common-law sense of deceit—which is one of the senses in which it is used in the wire fraud statute—includes "the deliberate concealment of material information in a setting of fiduciary obligation." *United States v. Holzer*, 816 F.2d 304, 308 (7th Cir. 1987), *vacated on other grounds by McNally v. United States*, 483 U.S. 350 (1987); *see also Carpenter v. United States*, 484 U.S. 19, 25–28 (1987); *United*

*States v. Hausmann*, 345 F.3d 952, 956 (7th Cir. 2003); *United States v. Keplinger*, 776 F.2d 678, 697–98 (7th Cir. 1985); *United States v. Dial*, 757 F.2d 163, 168 (7th Cir. 1985). Here, Centec essentially contends that Plutshack, by virtue of being both the general manager and a member of Centec LLC, owed the firm a duty of loyalty and/or a fiduciary duty, which he breached when he secretly convinced Kieselmann and Keofitt to terminate their relationships with Centec and begin doing business with his own, competing firm. *See* Wis. Stat. § 183.0402(1)(a) (member of limited liability company has duty to "deal fairly with the limited liability company"); *Gen Auto. Mfg. Co. v. Singer*, 19 Wis. 2d 528 (1963) (general manager of firm owes duty of loyalty to firm that is breached when manager secretly diverts firm's business to his own "side line business"). This conduct would arguably amount to "fraud" because Plutshack, as Centec's general manager, held a position of trust within the firm, which carried with it the implicit representation to the firm that he would not undermine its relationships with its business partners for his own personal gain. *See Carpenter*, 484 U.S. at 25–28 (employee engaged in scheme to defraud when he appropriated employer's confidential business information for his own use, "all the while pretending to perform his duty of safeguarding it"); *Dial*, 757 F.2d at 168 (commodities broker breaches "implicit[]" representation to his customers that he would try to get them the best possible price by trading ahead of them). In short, Plutshack was arguably misleading Centec by pretending to be Centec's loyal agent when in fact he was attempting to steal the firm's important parts suppliers. And because Plutshack used the wires in the course of soliciting Kieselmann and Keofitt, his alleged conduct arguably amounts to wire fraud.

Although Plutshack's alleged conduct arguably amounts to wire fraud, I note that in some cases, courts have expressed doubt about converting violations of state

7

corporate law into federal crimes whenever the mails or wires are used in the course of the violations. The Seventh Circuit has "explained that a corporate officer's breach of fiduciary duty, when combined with a mailing or wire communication, is not sufficient to show mail or wire fraud." *United States v. Weimert*, 819 F.3d 351, 357 (7th Cir. 2016). The court has also observed that "[n]ot all conduct that strikes a court as sharp dealing or unethical conduct is a 'scheme or artifice to defraud.'" *Reynolds v. East Dyer Dev. Co.*, 882 F.2d 1249, 1252 (7th Cir. 1989). The court reasoned that, "[g]iven the pervasive use of the mails and of telephone and related services in the business world, along with the ease of satisfying the mailing or wiring requirement, such a broad meaning of fraud for the mail and wire fraud statutes 'would put federal judges in the business of creating what in effect would be common law crimes, *i.e.*, crimes not defined by statute.'" *Id.* (internal citation omitted).

In the present case, I do not need to decide whether Plutshack's using the wires in furtherance of his scheme to secretly divert Centec's supplier relationships to his own, newly formed company constitutes wire fraud in violation of § 1343. That is because even if it does, and Plutshack is deemed to have engaged in "racketeering activity" under RICO, Centec has not pleaded facts giving rise to a reasonable inference that Plutshack engaged in a "pattern" of such activity. Thus, Centec's RICO claim falters on the third element, and it is immaterial whether the complaint adequately alleges the other elements.[1]

The RICO statute provides that a "pattern of racketeering activity" requires at least two acts of racketeering activity, known as "predicate acts," during a ten-year

---

[1] For this reason, I also do not consider the defendants' arguments that Centec has not adequately pleaded the existence of a RICO "enterprise."

period.  18 U.S.C. § 1961(5).  However, showing that two such acts occurred within a ten-year period is insufficient to show a pattern of racketeering activity.  Rather, a plaintiff must satisfy the so-called "continuity plus relationship" test, which requires that the racketeering acts be related to one another (the relationship prong) and that they pose a threat of continued criminal activity (the continuity prong).  *Bible*, 799 F.3d at 659.  "[C]ourts carefully scrutinize the pattern requirement" to prevent abuse of RICO.  *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472–73 (7th Cir. 2007).  Congress passed RICO in an effort to combat "organized, long-term criminal activity," rather than "isolated or sporadic criminal activity," and it is not intended to provide a federal remedy for garden-variety fraud claims that could be pursued under state law.  *Id.*  The pattern requirement ensures that RICO applies only to conduct that amounts to, or constitutes a threat of, "*continuing* racketeering activity."  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989) (emphasis in original).

In the present case, I may assume that the alleged acts of wire fraud are related.  The question is whether the plaintiff has pleaded enough to show continuity.  Continuity can be either "closed ended" or "open ended."  *Jennings*, 495 F.3d at 473.  A "closed ended" period of racketeering activity involves a course of criminal conduct which has come to a close.  *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1022–23 (7th Cir. 1992).  To satisfy the continuity element in a closed-ended case, the plaintiff must prove a series of related predicates enduring a "substantial period of time."  *Id.*  The underlying rationale is that the duration and repetition of the criminal activity carries with it an implicit threat of continued criminal activity in the future.  *Id.*  In the present case, the alleged predicate acts of wire fraud occurred during the span of about one year, which is insubstantial.  *See Jennings*, 495 F.3d at 474 (noting that 10 months is an

9

insubstantial period of time and does not show closed-ended continuity); *Midwest Grinding*, 976 F.2d at 1024 (nine months is too short to establish closed-ended continuity).  In any event, Centec does not contend that it can establish closed-ended continuity.  *See* Br. in Opp. at 19–22.  Instead, it contends, the complaint adequately alleges open-ended continuity.

The concept of open-ended continuity is designed for cases in which the RICO action is brought before closed-ended continuity can be established.  *See H.J. Inc.*, 492 U.S. at 242.  In those cases, "liability depends on whether the *threat* of continuity is demonstrated."  *Id.* (emphasis in original).  To establish such a threat, the plaintiff must point "to past conduct that by its nature projects into the future with a threat of repetition."  *Id.* at 241.  The Supreme Court offered the following example of the type of conduct that would satisfy this standard:

> Suppose a hoodlum were to sell "insurance" to a neighborhood's storekeepers to cover them against breakage of their windows, telling his victims he would be reappearing each month to collect the "premium" that would continue their "coverage." Though the number of related predicates involved may be small and they may occur close together in time, the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future, and thus supply the requisite threat of continuity.

*Id.* at 242.  The Court noted, however, that open-ended continuity could be established in other ways, such as "by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business."  *Id.* at 242–43.

In the present case, I conclude that Centec has not alleged that Plutshack's past acts of wire fraud give rise to a threat that he will engage in future acts of racketeering. The story told by the complaint is that Plutshack decided to leave Centec, start a competing firm, and bring Centec's key suppliers with him.  Plutshack did not inform

10

Centec of his plans but instead secretly used his position at Centec to convince the suppliers to follow him to the new entity. As I have explained, Plutshack's secretly using his position for this purpose was deceitful, and because Plutshack used the wires in furtherance of his plans, he may have committed wire fraud. However, the cat is now out of the bag, and the fraud is over. Centec knows that Plutshack is no longer acting on its behalf and that he has started a competing firm. Although Plutshack is still a member of Centec, he is no longer in charge of the firm's business. Thus, because Plutshack no longer occupies a position of trust at Centec, there is no threat that Plutshack will continue to exploit that trust to steal Centec's business relationships. And Centec has pleaded no facts that suggest that Plutshack might try to defraud other companies or commit other criminal acts in the course of operating Aegir Specialty Valves or any other entities with which he may be associated. Thus, there is no "threat of repetition" in this case. *H.J. Inc.*, 492 U.S. at 241; s*ee also Midwest Grinding*, 976 F.2d at 1023 (finding no open-ended continuity where employee who secretly diverted his employer's customers and employees to a competing firm left the company to join the competing firm).

Centec contends that it can show open-ended continuity because Plutshack is still a member of the LLC and therefore continues to owe statutory duties to the LLC, including the duty to deal fairly with the LLC. *See* Wis. Stat. § 183.0402. Centec seems to imply that Plutshack would continue to be in breach of those duties so long as he is operating a competing firm. Maybe so.[2] However, because Plutshack is no longer competing in secret, his is no longer engaged in a scheme to defraud Centec. *See*

_____

[2] Centec has not cited any authority suggesting that a member of an LLC breaches his duty to deal fairly with the LLC by openly competing with it. Nor have I been able to find any such authority.

*United States v. O'Hagan*, 521 U.S. 642, 654–55 (1997) (where theory of fraud is based on "[d]eception through nondisclosure," there is no fraud where defendant is no longer "feigning fidelity" to the other party but instead discloses that he will engage in unlawful activity). If under Wisconsin corporate law it is unlawful for Plutshack to compete with a limited liability company of which he is a member, Centec may have causes of action against him under state law. But Plutshack's continuing to openly compete with Centec would not be deceptive and therefore could not establish a pattern of mail and wire fraud. *See id.* (although fiduciary may be liable for breach of state-law duty of loyalty, he is not engaged in deception where he discloses that he intends to engage in conduct that would amount to a breach of such duty).

Centec also contends that it can show open-ended continuity because Plutshack continues to do business with the suppliers he secretly solicited while Centec was under the impression that he was acting on its behalf. However, Plutshack's continuing to do business with these suppliers is not itself a crime or a fraud and does not involve new acts of racketeering. Perhaps Centec has a right to recover any profits that Plutshack earns through his ongoing relationships with these suppliers as a remedy for Plutshack's breach of his state-law duties to Centec, but it does not follow that Plutshack is currently engaged in racketeering activity or that he is likely to engage in such activity in the future.

Accordingly, I conclude that Centec has failed to allege a RICO claim against Mark Plutshack under 18 U.S.C. § 1962(c) and will dismiss the RICO claim against him. Because the complaint does not allege factual content giving rise to the reasonable inference that the remaining defendants conspired to violate § 1962(c), I will dismiss the RICO claims against those defendants. Because it does not appear that Centec could

12

cure the defects in its complaint by alleging additional facts that would establish a pattern of racketeering activity or a conspiracy to violate § 1962(c), I will not grant Centec leave to amend its complaint. Finally, because all federal claims have been dismissed, I will relinquish supplemental jurisdiction over the state-law claims against Mark Plutshack. *See* 28 U.S.C. § 1367(c)(3).

## III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendants' motions to dismiss (ECF Nos. 22 & 25) are **GRANTED**. The Clerk of Court shall enter final judgment dismissing the RICO claims on the merits and dismissing the state-law claims without prejudice to Centec's re-filing them in state court.

Dated at Milwaukee, Wisconsin, this 30th day of June, 2016.


s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge